## SEYMOUR et al. v. SECURITY TRUST CO. OF AUSTIN et al.

### No. 9717.

Court of Civil Appeals of Texas. Galveston.

July 1, 1932.

Rehearing Denied Dec. 15, 1932.

Hunt & Hunt and W. S. Hunt, all of Houston, for appellants.

Woodward & Gay and Hart, Patterson & Hart, all of Austin, and Baker, Botts, Andrews & Wharton, James L. Shepherd, Jr., and S. H. German, all of Houston, for appellees.

LANE, J.

On the 17th day of September, 1926, Harriet A. Seymour, Mary F. Seymour, Edward P. Seymour, Beatrice Seymour Wilson, and Florence Seymour Hood, hereinafter referred to as the Seymours, were the owners of 40 acres of land, a part of the A. C. Reynolds survey now in the town of West University Place, bounded on the east by Kirby drive, on the south by Glen street, on the west by Wakeforest avenue, and on the north by a small tract lying between it and University boulevard.

On the day and date above stated, the Seymours, for the consideration of $12,000 cash paid to them by one J. H. Page, and the further consideration of one promissory vendor's lien note for the sum of $74,000 executed by J. H. Page and delivered to the Seymours, and for the further consideration and promise and obligation of J. H. Page that he and his heirs, assigns, and associates would within six months from the date of the execution and delivery of said deed begin, and within twelve months complete, the following improvements at a cost of not less than $20,000, to wit:

"1. Curb and gutter upon both sides of one street to be called Belle Court Boulevard, extending North and South through the entire length of said forty acres;

"2. A six inch sanitary sewer extending through the entire property;

"3. Natural gas line through the entire property;

"4. Extensions of water works and water lines, including main lines to serve the entire 40 acres;

"5. The balance of said $20,000.00, if any, to be expended upon sidewalks, graveling streets and other improvements"

—conveyed to J. H. Page, trustee, their said 40 acres of land.

This 40 acres was made a part of University Place and designated as Pemberton Place. It was divided into lots, blocks, and streets, as it was intended by the interested parties, including the Seymours.

The Pemberton Company, a corporation, became the owner of said 40 acres by deed from J. H. Page, subject to the lien held by the Seymours. Said 40 acres was, as it was intended to be by the Seymours and those holding under them, divided into lots, blocks, and streets, as an addition to University Place.

As laid out, street No. 1 was called Flenwood road, No. 2 Pemberton drive, No. 3 Bar-

bara lane, No. 4 Caroline way, No. 5 Stanford street, and No. 6 Belle Court boulevard. After said land had become a part of University Place and designated as Pemberton Place, and after said streets had been laid out and named, the city commission of the city of University Place passed an ordinance ordering that designated parts of the above-named streets be paved or improved as designated by such ordinance. By such ordinance the city engineer was directed to prepare plans and specifications for the improvements ordered. Among others, the ordinance contains the following provisions:

"That the cost of making said improvements shall be paid as follows:

"The whole cost of making all of said improvements shall be paid by the owners of property abutting said portion of said streets or portions thereof and the city shall not be liable to pay any part thereof.

"That portion of the cost of such improvements which is not to be assessed against said property and the owners thereof as is hereinafter set forth, shall be arranged for by private agreement between the contractor making said improvements and the owner or owners of said property upon such terms and conditions as may be agreed upon between said contractor and said property owners.

"That the whole cost of constructing, reconstructing, repairing and realigning sidewalks, curbs, and gutters, and nine-tenths of the cost of said improvements exclusive of sidewalks, curbs and gutters, shall be assessed against the respective parcels of property abutting said streets, or portions thereof and against the owners thereof, and such cost shall be apportioned among the respective parcels of property so abutting and the owners thereof in accordance with the front foot plan or rule; provided that if the application of such rule would, in the opinion of the City Commission in particular cases, result in injustice or inequality it shall be the duty of the City Commission to apportion and assess said cost as it may deem just and equitable, having in view the special benefits in enhanced value to be received by such respective parcels of property and the owners thereof, the equities of such owners, and the adjustment of such apportionment so as to produce substantial equality of benefits received and burdens imposed.

"Assessments, when made, shall be a personal liability and charge against the real and true owner or owners of said respective parcels of property, and shall be secured by a lien against said respective parcels or property superior to all other liens and claims of every character except State, County and City ad valorem taxes, and said personal liability and said lien when fixed by the assessing ordinance hereafter to be passed by said City Commission shall relate back and take effect as of the date of the passage

and approval of this resolution ordering said improvement, and the passage and approval of this resolution shall be notice to all persons of the fixing of such personal liability and the creation of such lien. * * *

"The sums so assessed against said property and the owners thereof shall be evidenced by special assessment certificates to be issued in the name of said city in favor of the contractor making said improvements, and said contractor shall be required to accept said certificates in full payment of that part of the property owners' share of the cost of improvements so assessed against said property and the owners thereof. Said certificates shall be of such form as may be authorized by law and as may be provided for in the ordinance levying assessments hereafter.

"No assessment shall be made against any parcel of property or the owner thereof until after a full and fair hearing has been given such owner and all others in anywise interested therein as is provided by law in such cases."

The ordinance also provides that the paving to be constructed shall be with six-inch concrete base covered by a one and one-half inch cold rolled rock asphalt topping.

The survey was made by the city engineer as ordered, which gave a description of the property abutting on those parts of the streets named which were to be improved, designating them as units 1, 2, 3, 4, 5, and 6. It gave the estimated total cost of the improvements to be constructed on said streets, the names of the owners of the respective parcels of property abutting thereon, the number of front feet of each such parcel, and the estimated amounts to be assessed against the several parcels or properties and the respective owners thereof.

Report of such survey was presented to and approved by the city commission, and thereafter said city commission entered into a contract with Scott Shambaugh to construct such improvements, pertinent and material parts of which are as follows:

"Whereas, the City of West University Place, Texas, in Harris County, has heretofore by resolution passed by the City Commission on May 7th, 1928, ordered the improvement of Flenwood Road and sundry other streets in Pemberton Place, in said City, by installing sidewalks, curbs and gutters and by paving the same and constructing appurtenances, said streets and places so to be improved being in said order designated as units 1, 2, 3, 4, 5, and 6, and to which order and every part thereof is here referred to for all of the terms and provisions of said order and this contract is made in pursuance of the provisions of said order; and

"Whereas, contract for making said improvements has been awarded to Scott Shambaugh, of Houston, Texas,

"Now, therefore, it is agreed by and between the City of West University Place, in Harris County, Texas, hereinafter called the 'city' and Scott Shambaugh, of Harris County, Texas, hereinafter called the 'contractor' as follows:

"(1) The contractor binds and obligates himself to make and construct said improvements on the streets described as units 1, 2, 3, 4, 5 and 6 in said order aforesaid, according to the plans and specifications therefor, prepared by the City Engineer and approved by the City Commission of said City, all at his own cost and expense and to furnish all material therefor and to perform or cause to be performed all labor necessary to make said improvements, and to pay for all labor and material necessary to construct same, in consideration of the several sums of money specified in the unit price schedule set forth in the next succeeding paragraph; and in consideration for said improvements being made by said contractor, the City obligates itself to issue and deliver to said contractor valid, binding and enforceable special assessment certificates against the property abutting said portions of said streets and the owners thereof, which said certificates shall represent the whole cost of curbs, gutters and sidewalks and nine-tenths of the cost of the remaining improvements, upon the completion and acceptance of such improvements by the City, and for remaining cost of such improvements, the contractor shall look solely and only to the owners of said property under private agreement with them, and in no event shall the City be liable to pay any part of the cost of making such improvements.

"(2) The prices which the contractor shall be paid for making said improvements, and which he agrees to take therefor, are as follows: * * *

"For one inch asphalt topping per sq. yard, $1.10

"For one and one-half inch asphalt topping, per square yard, $1.80."

After the occurrence of the several matters and things above mentioned, due publication was made of the following notice:

"Official Notice to Property Owners on Flenwood Road and Sundry Other Streets in the City of West University Place, Texas, Designated as Units 1, 2, 3, 4, 5, and 6 and to All Lien Holders and Others in Any Wise Interested Therein:

"I, Erwin Cushman, Secretary of the City of West University Place, do pursuant to direction in the hereinafter set out resolution hereby give notice by publication of the same of the matters and things therein contained and particularly of the hearing to owners of property abutting on said streets and to lien holders and others in anywise interested therein, which resolution follows:

"Resolution approving engineer's statement or roll of property abutting Flenwood Road and sundry other streets in the City of West University Place, names of owners, estimated cost of making improvements on said streets, and estimated amounts to be assessed against abutting property owners thereof, fixing time and place for a hearing to be given to owners of such property and all others interested therein, and providing for notice of such hearing and declaring an emergency.

"Be it resolved by the City Commission of the City of West University Place, that:

"Whereas, the City Commission of the City of West University Place and heretofore by resolution passed and adopted the 7th day of May, 1928, ordered the improvement of Flenwood Road and sundry other streets in said City, designated as Units 1, 2, 3, 4, 5 and 6, providing that a share of the cost thereof shall be assessed against property abutting said streets and the owners thereof; the general nature of said improvements so ordered being as follows:

"(a) By constructing, reconstructing, repairing and realigning sidewalks, curbs, gutters, where adequate sidewalks, curbs and gutters, or either of them are not installed, so as to bring them to proper grade and in proper alignment.

"(b) By filling, grading and raising, where necessary, and by paving said streets from curb to curb with a six inch concrete base covered by a one inch cold rolled rock asphalt topping; the width of said paving between curbs to be approximately as follows:

"For Units Nos. 1, 3, 4, and 5, 25 feet.

"For Unit No. 2, 35 feet.

"No pavement to be laid on Unit No. 6.

"(c) By constructing all necessary appurtenances and incidentals to any of said improvements, including drains and culverts; and

"Whereas, the work of making said improvements has been awarded to Scott Shambaugh and contract therefor has been entered into between the City of West University Place and said Scott Shambaugh; and

"Whereas, the City Engineer, at the request and direction of the City Commission, has prepared and presented to the Commission a written statement or roll showing a description of the property which abuts said streets, such description being by lot and block number in Pemberton Place, and addition to said City, as well as the names of the owners of said respective parcels of property, and an estimate of the cost of making such improvements, and also showing the estimated amounts proposed to be assessed against the owners of such abutting property, respectively, and against their property for such improvements; and

"Whereas, the Commission is desirous of fixing the time and place for a hearing to be

given to said owners and all others interested relating to all matters pertaining to said improvement and to provide for notice thereof;

"Now, therefore, be it resolved by the City Commission of the City of West University Place:

"I. That the Engineer's roll or statement submitted by the City Engineer showing description of property abutting on said streets, names of owners, an estimated cost of making improvements to Flenwood Road and sundry other streets in said city, designated as Units 1, 2, 3, 4, 5, and 6, the estimated amount to be assessed against the abutting property and owners thereof, respectively, and the other data therein contained, be and the same is here now in all things approved. Said roll or statement being as follows:

"Said roll or statement is not shown in full in this notice but summarized as follows, to-wit:

"Units Nos. 1, 3, 4, and 5, Flenwood Road, Barbara Lane, Caroline Way and Stanford Street, $82,000.00.

"Total estimated cost of improvements including sidewalks, curbs, and gutters for each of such units.

"Amounts proposed to be assessed against abutting property owners thereof on each such units:

"Against the Pemberton Company as owner of all abutting lots:

"For sidewalks, per front foot (the total cost), $1.00.

"For curb and gutter per front foot (the total cost) $1.00.

"For other improvements (9/10th of cost thereof) per front foot, $7.00.

"Unit No. 2, Pemberton Drive.

"Total estimated cost of improvements, including sidewalks, curbs and gutters for said unit, $27,000.00.

"Amounts proposed to be assessed against abutting property and owners thereof on said units:

"Against the Pemberton Company as owner of all abutting lots:

"For sidewalks, per front foot (the total cost), $1.00.

"For curb and gutter per front foot (the total cost) $1.00.

"For other improvements (9/10th of cost thereof) per front foot $10.00.

"Unit No. 6, Belle Court Boulevard:

"Total estimated cost of improvements on such unit consisting only of sidewalks, grading parkways and installing drains and appurtenances (pavements between curbs having been laid previously), $7,000.00.

"Amounts proposed to be assessed against abutting property and owners thereof on such unit:

"Against the Pemberton Company as owner of all abutting lots:

"For sidewalks, per front foot (a total cost), $1.00.

"For other improvements (9/10ths of cost thereof) per front foot, $1.00.

"II. That a hearing be given before the City Commission of the City of West University Place on the 3rd day of October, 1928, at 8 o'clock p. m., in the City Hall of said City, to all owners of property described in the Engineer's statement, and to all lien holders or others interested in said improvements, at which hearing all owners of any of said property or any lien holder or any one having or claiming any right, title or interest therein in any manner, shall have a full and fair opportunity to be heard on the question of benefits to said property by reason of such improvement or about any other question about which they wish to be heard, and they and each of them shall have the right to appear in person or by attorney or agent and make any protest or objection they desire to make about any matter pertaining to such improvement, and such hearing shall be a full and fair hearing and said hearing shall be kept open from day to day until the Commission is satisfied that all persons have had a full and fair opportunity to be heard on any matter pertaining thereto, after which said hearing shall be closed, and assessments levied covering the property owners' share of the cost of such improvement.

"Notice of such hearing and the time, place and purpose thereof shall be given by the City Secretary in the manner and for the length of time provided by law in such cases, to-wit: by advertisement inserted at least three times in the Houston Post-Dispatch, a newspaper of general circulation in Harris County, published in the City of Houston, Texas, and the nearest to the City of West University Place (there being no newspaper published in said City of West University Place), the first publication to be made at least ten days before the date set for said hearing; said notice shall describe in general terms the nature of the said improvements proposed to be made and for which assessments are proposed to be levied, the names of the streets, highways and portions thereof to be improved, the estimated amount or amounts per front foot proposed to be assessed against the owners of abutting property, respectively, and such property, on each street, highway or portion thereof, and shall state the estimated total cost of the improvements on each such street, highway or portion thereof, and shall state the time and place at which such hearing shall be held.

"III. The condition of said streets and the necessity for early completion of the work of improving same creates an emergency and it is therefore ordained that all rules requiring ordinances to be read at more than one meet-

ing be dispensed with, and that this ordinance be and is finally passed on first reading, and shall take effect from and on this date.

"Passed by unanimous vote and approved this the 20th day of September, 1928.

"H. B. Schlesinger, Mayor.

"Attest: Erwin Cushman, City Secretary."

There being no response by any one to such notice, Scott Shambaugh proceeded under his contract to improve said streets, and after the completion thereof the city commission approved and accepted such improvements and in payment therefor it issued to Scott Shambaugh 169 paving certificates, to secure which a first lien was fixed against 202 lots, respectively, parts of the 40 acres of land sold by the Seymours to Page, and by Page to the Pemberton Company, and against which the Seymours held their vendor's lien and superior title to secure the purchase-money notes executed and delivered by J. H. Page to them for the sum of $74,000.

On the 8th day of October, 1928, Scott Shambaugh assigned and transferred by writing all of said certificates to Security Trust Company of Austin, together with the paving liens securing same; it being recited in such written transfer that: "Said paving certificates have been endorsed by said Scott Shambaugh 'without recourse' but the said Scott Shambaugh hereby covenants and warrants to and with the said Security Trust Company of Austin, its successors and assigns, that the procedure had before the City Commission of the City of West University Place, Texas, with reference to the improvement of said streets, and the assessments against said property owners and their property, is in all things valid, legal and sufficient."

Five of such certificates were later transferred to one W. K. Miekow.

This suit was brought by Security Trust Company of Austin against the Pemberton Company, Scott Shambaugh, the Seymours, and several other persons and firms, for the purpose of establishing and foreclosing the special assessment certificates issued to Scott Shambaugh owned by it, and for a personal judgment against the Pemberton Company for the sums due on such certificates, together with attorney's fees and costs of suit.

After such suit was filed one W. K. Miekow intervened, asserting similar rights of recovery by reason of his ownership of five of said certificates.

The plaintiff and intervener made all the usual necessary allegations in a suit of the character of the present one, including publication of notice of hearing, issuance of the certificates, a full compliance with the law applicable to the matters involved, default in payment of the certificates, and asserting priority of liens and personal liability of the Pemberton Company.

The Seymours alleged by exceptions and plea the invalidity of the assessment certificate and lien sought to be created thereby and all proceedings in relation thereto, because such proceedings were not done in conformity to the provisions of the Acts of the Legislature of 1927, 1st Called Sess., c. 106 (Vernon's Ann. Civ. St. art. 1105b), governing the right and authority of a city, such as West University Place, to contract for the pavement and improvement of its streets, and to fix liens against property abutting on such paved and improved streets, in that the contract in the present case provides that the city should not be liable or responsible for any portion of the costs of such improvements, but that the contractor should and that he would look solely to the owners of said abutting properties for the payment of the costs of the improvements, which had not and could not be assessed against the owners; it being provided in such contract that the contractor would make such arrangements with the owners as he could and thus protect the city from payment of any portion of the improvement costs.

Defendants Seymour also averred that the resolution and contract and all proceedings thereunder, including the assessment certificates, were void as against public policy and as tending to corruption, because H. B. Schlesinger was mayor of the city of West University Place and at the same time a large stockholder, director, and secretary of the Pemberton Company; that J. H. Rafferty was a director and president of the Pemberton Company and at the same time employed by the city of West University Place as city engineer and as such furnished the estimates and prepared the roll and plans and specifications; that it was informed and believed and charged that the contractor, Scott Shambaugh, was at the time of the execution of said contract and of the issuance of the special assessment certificates, to wit, May 7, 1928, to October 3, 1928, a large creditor and a large stockholder of Pemberton Company; that the Pemberton Company being unable to finance the improvement of the property by private contract, through its secretary, director, and stockholder, H. B. Schlesinger, who was mayor, procured the passage of the resolution of the city council of West University Place, dated May 7, 1928, under which resolution the said Schlesinger as mayor executed the contract with Scott Shambaugh of date May 7, 1928, covering the improvements.

That H. B. Schlesinger, the mayor of West University Place and presiding member of its governing body, and J. H. Rafferty, city engineer in charge of the construction of said improvements under said contract, were officers and directors of the Pemberton Company who were vitally interested in said contract.

They further allege the insufficiency of the notice published and that the amount as-

sessed for said improvements was from 30 per cent. to 50 per cent. greater than their costs. and that the contractor, Scott Shambaugh, had, with the knowledge and consent of the mayor, H. B. Schlesinger, and of the city engineer, J. H. Rafferty, added 30 per cent. to the costs of said improvements to take care of any discount he might have to make in the sale of said assessment certificates, and this 30 per cent. was added to the estimate of the costs by said engineer in order to take care of any loss the contractor might sustain by reason of the failure of the Pemberton Company to pay the one-tenth of the costs of the paving which he was required, under the contract and ordinance, to arrange with the owners of the property.

They also averred that such action was in violation of article 373 of the Penal Code of Texas, which prohibits any officer of any county, city, or town from becoming in any manner pecuniarily interested in any contract made by such county, city, or town, and prohibits such officer from receiving any money or property or any emolument or advantage whatsoever. They also charged that the city of West University Place lost its jurisdiction, if any it ever had, when the defendant Shambaugh accepted the mechanic's lien from the Pemberton Company to secure his paving contract on August 20, 1928.

Defendants Pemberton Company and Scott Shambaugh answered generally and alleged good faith, denied that any fraud or collusion existed between them and any persons whomsoever.

All other defendants except the Seymours, either filed disclaimers or were dismissed in open court from the suit prior to the conclusion of the trial of the cause.

Plaintiff and intervener specially excepted to all the defenses pleaded by the Seymours, all of which were sustained by the court, except their attack upon the validity of the published notice of the assessment.

A jury was impaneled and sworn to try the case, but after both parties had closed their evidence the court instructed a verdict for plaintiff and intervener for the sums sued for by them respectively, with foreclosure of the assessment liens upon each of the lots involved. The Seymours have appealed.

As already shown, the city commission of the city of West University Place passed a resolution under the provisions of sections 3 and 4 of chapter 106, Acts of the 40th Legislature of 1927, 1st Called Sess., p. 489 (Vernon's Ann. Civ. St. art. 1105b, subds. 3, 4), ordering the improvement of certain streets in said city. By such resolution it was stipulated the whole cost of making such improvements should be paid by owners of property abutting such improvements, and that the city should not be liable for any part thereof. It then provides that such costs of such improvements which cannot be assessed against the abutting property shall be taken care of by private agreements between the contractor making the improvements and the owner or owners of said property upon such terms as may be agreed upon by and between such contractor and the owners of said property. It then provides that nine-tenths of the cost of such improvements only shall be assessed against the respective parcels of property abutting the improved streets. Section 4 of the act mentioned provides: "That the cost of such improvements may be wholly paid by the city, or partly by the city and partly by property abutting upon the highway or portion thereof ordered to be improved, and the owners of such property, but if any part of the cost is to be paid by such abutting property and the owners, then before any such improvements are actually constructed, and before any hearing herein provided for is held, the governing body shall prepare, or cause to be prepared, an estimate of the cost of such improvements, and in no event shall more than all the cost of constructing, reconstructing, repairing and realigning curbs, gutters and sidewalks, and nine-tenths of the remaining cost of such improvements as shown on such estimate be assessed against such abutting property and owners thereof."

The contract entered into between the city commission and Scott Shambaugh provided for payment of costs of the improvements practically as does the resolution.

Appellants attack the validity of both the resolution and the contract, and contend that since neither provides that the municipality shall pay a part of the costs of such improvements, as required by law, but to the contrary both provide that the city shall not be required to pay any part thereof, such governing body failed to acquire jurisdiction of the subject-matter and therefore all proceedings under such resolution and contract, including the assessment certificates, are void.

We overrule appellants' contention. There is no requirement in the law that the city *must* pay a part of the cost. The city is left free to do with that portion which cannot be assessed against the property owner as it may see fit, and as the public welfare may justify. The property owner, as such, has no concern whatever about it, and the whole tenor of the act, from beginning to end, is intended to safeguard the property only as to the amount which may be assessed against him and his property. The statute is essentially an assessment statute and is to be construed as such. There is unquestioned power in the city to make assessment against the property and the property owner to cover nine-tenths of the cost of paving. , It is obvious, therefore, that so long as the property owner is not assessed more than nine-tenths of the cost of paving, he is in no position to complain, even though

the city is relieved from the other one-tenth. It is only when provisions of the law that are intended for his protection is not observed that he can require a strict compliance therewith.

In the very recent case of Clark v. W. L. Pearson & Company, 39 S.W.(2d) 27, 32, the Supreme Court itself, speaking through Judge Sharp of the Commission of Appeals, used this very significant language: "The improvement of highways and city streets is of a great public concern and is recognized as a public necessity and duty; the Legislature from time to time has enacted laws giving cities, under certain conditions, the authority to improve their highways and streets, and those laws should be *rationally* and *sensibly* construed *as to accomplish the object for which they were enacted.* The primary rule governing the construction of statutes in this state is that 'the provisions thereof shall be *liberally* construed with a view to effect their objects and promote justice.' "

■ There is another reason why the contention of appellants must be overruled. We think there was jurisdiction, and that appellants' complaint at most relates to an irregularity of apportionment of costs. This being true, appellants are by law precluded from raising the objections here urged, because they did not in any manner contest such an apportionment and assessment as provided by the second paragraph of section 9 of the legislative act (Vernon's Ann. Civ. St. art. 1105b, § 9), above referred to.

The contention now under consideration was before the Supreme Court of Illinois in the case of Cosgrove v. City of Chicago, 235 Ill. 358, 85 N. E. 599, 602. In disposing of the same the court said: "If the assessment roll which is the subject of complaint in this case improperly failed to charge the city with any part of the cost of the improvement as a public benefit, or if it failed to charge any property benefited with its just proportion of the cost of the improvement, section 47 of the local improvement act (Hurd's Rev. St. 1905, c. 24, § 553) makes provision for the correction of the errors and omissions, and the just and equitable distribution of the cost of the improvement between the public and private property and among the various parcels of property benefited. The plaintiffs in error should have presented these objections to the county court on the application for confirmation of the assessment roll."

Appellants in their answer to appellees' suit alleged that the mayor of West University Place at the time the proceedings relative to the improvements in question took place, was a large stockholder, director, and secretary of the Pemberton Company, which owned practically all, if not all, the property abutting on said improvements; that at such time J. H. Rafferty was employed by the city as its city engineer, and that he furnished the estimates, prepared the rolls and the plans and specifications upon which the contract with Shambaugh was based, and that at such time he (Rafferty) was president and director and a stockholder in the Pemberton Company; that at such time Scott Shambaugh, the contractor, was a stockholder and creditor of the Pemberton Company; that Shambaugh in making his bid to make the improvements fixed his estimate of costs and charges at 30 per cent. above the actual costs of the improvements to be made.

Appellants also alleged that the mayor of the city and the city engineer, by reason of their interest, were disqualified to do any act looking to making of the improvements; that the city engineer, who was also president of the Pemberton Company, permitted and approved estimates made by Scott Shambaugh, which included a surcharge of 30 per cent. made to absorb the estimated discount the contractor, Scott Shambaugh, thought he would be compelled to accept in disposing of the certificates, and that this surcharge was intended by the contractor to in part take care of the amount of the contract price which was agreed to be paid by the Pemberton Company; that the surcharge of 30 per cent. upon which the engineer received 5 per cent. fee and included in the assessment certificates were attempted to be made a burden and charge and lien upon the property superior to defendants' vendor's lien; and that such overcharge or surcharge were known to said mayor and governing body and to its city engineer and their acceptance and approval showed a reckless disregard for the rights of the defendants Seymour and was the exercise of an arbitrary power, inconsistent with and contrary to a sound public policy.

Appellants are insisting that by reason of the truth of the facts alleged, which they proposed to prove, all proceedings had in pursuance of the improvements were and are void because of the interests of the participants in the subject-matter.

Upon exceptions addressed thereto, the allegations next above stated were stricken out upon a holding, in effect, that the city of West University Place had no special or private interest in the contract for the improvements made and was not disqualified to act in the premises, and in effect holding that if the things alleged were true and would upon a contest provided by law require the setting aside of the proceedings resulting in the issuance of the assessment certificates, the failure of appellants to contest the proceedings and appeal therefrom was a waiver of all *inaccuracy, irregularity, invalidity, or insufficiency of the proceedings or contract with reference thereto, or with reference to such improvements, or on account of any matter or thing whatsoever.*

The words italicized are those used in the ninth section of the legislative act mentioned.

While we expressly disclaim any purpose to uphold or approve the negotiations and contract which the record discloses were entered into by the mayor and commissioners with Scott Shambaugh, we are bound to follow the law.

"Interest, of one or all of city board of trustees or other municipal body charged with the making or ratifying of assessments for street or other improvements arising from their ownership of property directly affected by improvement does not create such a disqualification to act as to render their action void." Federal Construction Co. v. Curd, 179 Cal. 489, 177 P. 469, 2 A. L. R. 1202; Hamrick v. Town of Albertville, 219 Ala. 465, 122 So. 448; City of Topeka v. Huntoon, 46 Kan. 634, 26 P. 488; Erie City v. Grant, 24 Pa. Super. Ct. 109.

There was nothing on the face of any of the proceedings looking to the pavement of the streets which tended to disclose to the governing body that the estimated cost of any item was excessive, or that any surcharge had been made by the contractor for any purpose. The Legislature, in passing the ninth section of the Acts of the 40th Legislature of 1927, evidently foresaw that the value of assessment certificates would be seriously impaired if testimony concerning inflated bids of contractors could be used to destroy the validity of such certificates, and therefore it very wisely passed the act mentioned.

By the provisions of the legislative act mentioned the governing body of the city is created a special tribunal for hearing, adjudging, and determining each and all of the matters mentioned therein. Its action on such matters, unless appealed from in time and manner provided by law, after notice of hearing has been duly made, is as final, binding, and conclusive as is the judgment of any court. Its judgment in such matters cannot be collaterally attacked except for want of jurisdiction. Glenn v. Dallas County Bois D'Arc Island Levee District, 114 Tex. 325, 268 S. W. 452, and authorities there cited; Hibbin v. Smith, 158 Ind. 206, 62 N. E. 447.

By section 9 of the act referred to it is provided as follows:

"No assessment herein provided for shall be made against any abutting property or its owners, * * * until after notice and opportunity for hearing as herein provided, and no assessment shall be made against any abutting property or owners thereof in excess of the special benefits of such property, and its owners in the enhanced value thereof by means of such improvements as determined at such hearing. Such notice shall be by advertisement inserted at least three times in some newspaper published in the city where such special assessment tax is to be imposed, if there be such a paper; if not, then the nearest to such city of general circulation in the county in which such city is located; the first publication to be made at least ten days before the date of the hearing. If any such notice shall describe in general terms the nature of the improvements for which assessments are proposed to be levied and to which such notice relates, shall state the highway, highways, portion or portions thereof to be improved, shall state the estimated amount or amounts per front foot proposed to be assessed against the owner or owners of abutting property and such property on each highway or portion, with reference to which hearing mentioned in the notice is to be held, and shall state the estimated total cost of the improvements on each such highway, portion or portions thereof * * * and shall state the time and place at which such hearing shall be held then such notice shall be sufficient, valid and binding upon all owning or claiming such abutting property * * * or any interest therein, such hearing shall be by and before the governing body of such city and all owning any such abutting property, or any interest therein * * * shall have the right, at such hearing, to be heard on any matter as to which hearing is a constitutional prerequisite to the validity of any assessment authorized by this Act, and to contest the amounts of the proposed assessments, the lien and liability thereof, the special benefits to the abutting property and owners thereof by means of the improvements for which assessments are to be levied, the accuracy, sufficiency, regularity and validity of the proceedings and contract in connection with such improvements and proposed assessments, and the governing body shall have power to correct any errors, inaccuracies, irregularities, and invalidities, and to supply any deficiencies, and to determine the amounts of assessments and all other matters necessary, and by ordinance to close such hearing and levy such assessments before, during or after the construction of such improvements, but no part of any assessment shall be made to mature prior to acceptance by the city of the improvements for which assessment is levied.

"Anyone owning or claiming any property assessed, or any interest therein, * * * who shall desire to contest any such assessment on account of the amount thereof, or any inaccuracy, irregularity, invalidity, or insufficiency of the proceedings or contract with reference thereto, or with reference to such improvements, or on account of any matter or thing not in the discretion of the governing body, shall have the right to appeal therefrom and from such hearing by instituting suit for that purpose in any court having jurisdiction within fifteen (15) days from the time such assessment is levied; and anyone who shall fail to institute such suit within such

time shall be held to have waived every matter which might have been taken advantage of at such hearing, and shall be barred and estopped from in any manner contesting or questioning such assessment, the amount, accuracy, validity, regularity, and sufficiency thereof, and of the proceedings and contract with reference thereto and with reference to such improvements for or on account of any matter whatsoever. *And the only defense to any such assessment in any suit to enforce the same shall be that the notice of hearing was not published or did not contain the substance of one or more of the requisites therefor herein prescribed, or that the assessments exceed the amount of the estimate, and no words or acts of any officer or employee of the city, or member of any governing body of the city, other than the action of the governing body shown in its written proceedings and records shall in any way affect the force and effect of the provisions of this Act.*"

Appellants make the further contention that since the legislative act mentioned provides for notice and what it shall contain, that is, the facts required to be stated therein, and since the notice published in this case failed to give notice of the transactions required to be given by the statute, the city commission was without jurisdiction to conclude the contract for the improvements and to issue the assessment certificates. They contend that it is shown by the undisputed evidence that the published notice failed to comply with the requirements of the statute, in that: "(a) It did not state that said improvement was to consist of any of those named in Sec. 1 of the above named Act; (b) it failed to state the points on each street named in the notice between which such improvement was to be made; (c) it does not state the estimated cost of such improvement per front foot as to either paving, curbing and/or gutters or sidewalks; (d) it does not show the estimated total cost of the whole improvement as to each street or unit; (e) it did not describe the street, highway, highways or portions thereof to be improved nor where the same began nor where the same ended; and it further affirmatively appearing that the appellants had no other notice or knowledge of such improvement, said notice was fatally defective and conferred no jurisdiction on the city governing body to hold the hearing for benefits or to levy such assessments and all of said assessments and certificates are wholly void."

We are of opinion that a correct decision of such contention, either for appellants or adversely to them, will effectually dispose of all issues presented by this appeal which we have not already disposed of, for if the published notice was insufficient to confer jurisdiction on the city commission to levy the assessment against the properties in question and to issue the certificates sued upon, such

certificates are absolutely void and no recovery could be had upon them. To the contrary, if the notice was substantially as required by the statute, appellants by their failure to institute a contest of the proceedings, of which they had at least constructive notice, and failure to appeal from the judgment of the governing body, are now barred by such judgment from making a collateral attack upon the same.

The pertinent inquiry then is: Was the notice as published in substantial compliance with the provisions of the law? We think the notice was in substantial compliance with the law. It fixed the time of hearing and gave all interested persons full opportunity to be heard upon any and all proceedings subject to contest under the provisions of the legislative act mentioned. By appropriate reference and adoption it made the resolution of the city commission approving the engineer's report a part of the same. It recites the fact that the work of making such improvements had been awarded to Scott Shambaugh, and that a contract had been entered into with Shambaugh by the city of West University Place, wherein it was agreed that Shambaugh, for recited considerations, should make the improvements.

Looking to the things disclosed by the notice, when construed in the light of what the undisputed evidence shows appellants already knew of the situation, it is apparent that the notice is a substantial compliance with the law. By such notice, coupled with facts known to appellants, it is shown that it referred to the resolution of the city commission for full particulars as to the nature of the improvements. Reference was made in the notice to the engineer's report and the substance of such report was made a part thereof for full particulars as to the improvements, the particular streets and portions thereof to be improved, the lots and blocks to be affected, the total estimated cost per front foot of each and every part of the work to be done, and the estimated total cost of the improvements on each such street, portion or portions thereof.

The notice discloses that the resolution of the city commission approving the engineer's statement or roll contained such statement or roll in full. The notice reproduces the resolution verbatim, until the statement or roll is reached. It then states: "Said roll or statement being as follows." Instead of then copying the roll or statement in full, it is expressly stated that the same is not "shown in full in this notice, but summarized." Thus the person reading the notice is plainly advised that for the sake of brevity the statement or roll is being summarized, so that he will not be misled into a belief that what follows is all of its contents, but will be thereby cautioned to look to the resolution and roll or statement for all details. It does, however, give very

full and complete summary of all of the essential portions of the roll or statement. It is obvious that all that was required was a sufficient summary to advise the property owner in a very general way of the contents of the resolution and roll or statement, so that he would thereby be put upon inquiry. If it was sufficient to put him on inquiry and lead him to an examination of the resolution, and engineer's roll or statement, then it was unquestionably sufficient.

In Haggart v. Alton, 38 S. D. 527, 162 N. W. 158, 160, a South Dakota case, the court, in speaking of the sufficiency of notice such as is here under consideration, said: "A description is certain which is capable of being made certain through the examination of records to which it fairly calls one's attention." Again: "We are of the opinion that, inasmuch as one reading this notice would receive therefrom such information as, followed by reasonable investigation, would fully advise him of the boundaries of the proposed work, the notice should be held good at least as against one who makes no claim that he was misled by the description given."

In Haner v. City of Eugene, 95 Or. 596, 187 P. 841, 843, 188 P. 711, a question of the sufficiency of notice was involved. The notice contained this language: "The work shall be done in accordance with the plans and specifications of the city engineer filed in the office of the city recorder and in accordance with the terms of said Ordinance No. 1406." With reference to such language the court said: "This reference, in point of law, made these plans a part of the notice just as effectually as if they had been copied in full thereon."

In Eckhart v. C. H. Atkinson Paving Co., 46 S. D. 147, 191 N. W. 441, 442, the court, speaking of the sufficiency of the notice, said: "But if there is still a doubt, it would be removed by examination of the plans and specifications on file in the city engineer's office which are by reference incorporated into the resolution, or to make such inquiry as would be suggested to a person of ordinary understanding as to what property would be affected by the proposed improvement."

For other cases strongly in point, see Spalti v. Town of Oakland, 179 Iowa, 59, 161 N. W. 17; City of North Yakima v. Scudder, 41 Wash. 15, 82 P. 1022.

What is said in the decisions from which we have quoted and in those cited is peculiarly applicable to the notice given in the present case. It will be observed that in the act of the Legislature hereinbefore mentioned, after providing that one who fails to appeal from the action of the governing board within 15 days from the time the assessment is levied, shall be estopped and barred from questioning the assessment *on account of any matter whatsoever*, it is added: "And the only defense to any such assessment in any suit to enforce the same shall be that the notice of hearing was not published or did not contain the substance of one or more of the requisites therefor herein prescribed, or that the assessments exceed the amount of the estimate, and no words or acts of any officer or employee of the city, or member of any governing body of the city, other than the action of the governing body shown in its written proceedings and records shall in any way affect the force and effect of the provisions of this Act." Section 9.

For the reasons pointed out we feel constrained to affirm the judgment, and it is accordingly so ordered.

Affirmed.