

# The Attorney General of Texas

June 10, 1982

**MARK WHITE**
Attorney General

Supreme Court Building
P. O. Box 12548
Austin, TX. 78711- 2548
512/475-2501
Telex 910/874-1367
Telecopier 512/475-0266

1607 Main St., Suite 1400
Dallas, TX. 75201-4709
214/742-8944

4824 Alberta Ave., Suite 160
El Paso, TX. 79905-2793
915/533-3484

1220 Dallas Ave., Suite 202
Houston, TX. 77002-6986
713/650-0666

806 Broadway, Suite 312
Lubbock, TX. 79401-3479
806/747-5238

4309 N. Tenth, Suite B
McAllen, TX. 78501-1685
512/682-4547

200 Main Plaza, Suite 400
San Antonio, TX. 78205-2797
512/225-4191

An Equal Opportunity/
Affirmative Action Employer

Honorable Reynaldo S. Cantu, Jr.
Criminal District Attorney
Cameron County
Hall of Justice
974 E. Harrison Street
Brownsville, Texas    78520

Opinion No. MW-477

Re:   Whether a city official
may participate in Federal
Urban Development Action
Grant in private capacity as
merchant

Dear Mr. Cantu:

You have asked the attorney general whether a conflict of interest arises as a result of the following situation. The city of San Benito has applied for an Urban Development Action Grant [hereinafter UDAG] pursuant to 42 U.S.C. sections 5318-5320 and 24 C.F.R. sections 570.450 – 570.464. The federal money would be used to subsidize interest on loans between banks and participating businesses and to pay for street improvement in full. The mayor and two city commissioners own businesses eligible to participate in the grant.

The Secretary of the Department of Housing and Urban Development has the authority to waive any conflict of interest which is not a violation of state or local law or charter provision. However, before he will issue a written waiver, the Secretary has requested that the city obtain an Attorney General Opinion as to whether a conflict exists that violates state or local laws. Thus we address only Texas requirements relating to conflicts of interest.

. You have informed us that San Benito is a "home rule" city and have sent a copy of article 3, section 4 of the city charter, which states:

> No officer, agent or employee of the City of San Benito or appointee of the City Commission or appointee of any officer of said City, shall be pecuniarily interested, directly or indirectly in any contract let by the City Commission or for and in behalf of said City. Nor shall any officer, agent or employee of said City be pecuniarily interested directly or indirectly in any public work or improvement let, supervised or commenced

by said City or which shall be paid for wholly or
in part by said City....

You have also stated that a committee consisting of members of
the Board of City Development (a branch of the San Benito Chamber of
Commerce) was appointed by the president of the Chamber of Commerce to
oversee the distribution of the interest subsidy. The portion of the
grant used for city improvement will be overseen by the city. San
Benito is not required to provide any matching funds.

You have also informed us that an engineer was hired to study the
city and to independently determine which area of the city would
qualify for and benefit from a grant, following the standards set
forth in 42 U.S.C. sections 5318(b)(1) and (2). The final
determination of the area to be improved was made by the Secretary.
All businesses in the designated area were eligible for interest
subsidies from the Department of Housing and Urban Development
[hereinafter HUD] by request, and upon meeting requirements as
"participating businesses."

There are two contracts which must be examined for conflicts:
one between the city and HUD; the other, representative of several,
between the city and participating businesses.

The city [Recipient] warranted, in its contract with the
Secretary, that no member, officer, or employee would have any
interest, direct or indirect, in any contract.

Section 5.01(8) of the contract states:

> <u>No member, officer, or employee of the
> Recipient,</u> or its designees, or agents, no
> consultant, no member of the governing body of the
> Recipient or the locality in which the program is
> situated, and no other public official of the
> Recipient or such locality or localities, who
> exercises or has exercised any functions or
> responsibilities with respect to the Project
> during his or her tenure, <u>shall have any interest,
> direct or indirect, in any contract or
> subcontract, or the proceeds thereof, for work to
> be performed in connection with the Project or in
> any activity, or benefit therefrom, which is part
> of this Project.</u>
>
> (However, upon written request of the
> Recipient, the Secretary may agree in writing to
> waive a conflict otherwise prohibited by this
> provision whenever there has been full public

> disclosure of the conflict of interest, and the
> Secretary determines that undue hardship will
> result either to the Recipient or the person
> affected by applying the prohibition and that the
> granting of a waiver is in the public interest.
> <u>No such request for a waiver shall be made by
> Recipient which would, in any way, permit a
> violation of State or local law or any charter
> provision of the Recipient.</u>) (Emphasis added).

This contract was signed in November 1980. The mayor, upon city
commission approval, signed on behalf of the city. At the time the
contract was signed, the mayor and one commissioner owned
participating businesses. A second commissioner elected to become a
participating business at a later date. A conflict of interest
existed at this point under Texas common law and article 3, section 4
of the San Benito City Charter.

The common law rule, followed in Texas and codified as article 3,
section 4 of the San Benito City Charter, is that municipal officers
and agents cannot be pecuniarily "interested in" contracts of any
character with the municipality. Such an interest voids the contract.
See, e.g., <u>Delta Electric Construction Company, Inc. v. City of San
Antonio</u>, 437 S.W.2d 602 (Tex. Civ. App. - San Antonio 1969, writ ref'd
n.r.e.); <u>City of Edinburg v. Ellis</u>, 59 S.W.2d 99 (Tex. Comm'n App.
1933); 10 E. McQuillin, The Law of Municipal Corporations §29.97 (3rd
ed. 1978); 63 C.J.S. <u>Municipal Corporations</u> §§988 <u>et seq.</u>; 40 Tex.
Jur. 2d <u>Municipal Corporations</u> §430; Attorney General Opinions MW-342
(1981); MW-155, MW-124 (1980); H-1309 (1978); H-916 (1976); H-695,
H-624 (1975); H-354 (1974); M-340 (1969).

The rule was discussed in <u>Meyers v. Walker</u>, 276 S.W. 305, 307
(Tex. Civ. App. - Eastland 1925, no writ):

> If a public official directly or indirectly has a
> pecuniary interest in a contract, no matter how
> honest he may be, and although he may not be
> influenced by the interest, such a contract so
> made is violative of the spirit and letter of our
> law, and is against public policy.

See also Penal Code §39.01. The benefit to be received by each
official is the payment of interest on each official's loan; it is
thus direct, personal, and pecuniary.

Although city officials attempted to deal with this conflict by
appointing a committee to oversee the interest subsidy payments, the
contract is between the city and HUD. Section 4.01 of the contract
states:

> By its execution of this Grant Agreement, the Recipient represents and warrants that it has the legal capacity to assume the responsibilities for compliance with all applicable Federal rules and agrees and undertakes to assume and carry out all such responsibilities in accordance with all the requirements which are or may be established pursuant thereto.

In addition, the contract commits the city to keep and maintain books, records and other documents for grant funds, and to keep them open for inspection by the Secretary. Sec. 6.01(a), (b). Even though the city tried to delegate the responsibility for distribution and accounting to another group, the city has contractually obligated itself to be responsible. Attorney General Opinions H-1212 (1978); M-887 (1971).

Pursuant to section 10.01 of the contract and 24 C.F.R. section 570.458(c)(7), the city agreed that it would present evidence of legally binding commitments between the participating businesses and itself. A legally binding commitment is a legally enforceable written obligation by a participating party to complete a specified activity approved as part of the action grant. Sec. 570.451(k). The agreement is between the city and the participating party. Sec. 570.458(c)(7). Each official had a pecuniary interest in agreements signed by the mayor (on behalf of the city) and individual officials as participating businesses.

The legally binding commitment itself contains a conflict of interest section in which the participating business must warrant:

> that it is not a member, officer, or employee of the Recipient, or its designees, or agents, a consultant, member of Recipient's governing body, or the governing body of the locality in which the program is situated, and that it has not and will not exercise any functions or responsibilities with respect to the project during his or her tenure, shall have no interest, direct or indirect, in any contract or subcontract, or in the proceeds thereof, for work to be performed in connection with the Project or in any activity, or benefit therefrom, which is part of this Project.
>
> In the event Participating Business is in conflict with any of the provisions contained in the paragraph above, he or she has or will, before accepting any funds resulting from the Grant, obtain a waiver from the Secretary as to any such conflict. (Emphasis added).

This section would be violated in at least four of the contracts between the city and the participating businesses. In addition, this office has stated that dual agency creates a conflict similar to that of officials with pecuniary interests. Attorney General Opinion H-1309 (1978) states:

> Closely related to the policy against public contracts in which one of the contracting officials has a pecuniary interest is the policy against dual agency. An agent may not represent the opposing party in a transaction without the full knowledge and consent of his principle. (Citations omitted). Although this rule has developed in the context of private transactions, we believe it is relevant to the conduct of persons acting as agents of the state. Like the policy against conflict of interest in public contracts, it guards against competing interests of a public official which would 'prevent him from exercising absolute loyalty and undivided allegiance to the best interest' of the governmental entity he serves.... In view of the courts' concern about the disinterestedness of public officials as expressed in cases like Meyers v. Walker, supra, we believe they would be reluctant to find the state's consent to its agent's representation of the opposite party in a transaction.

We believe that the issue of dual agency creates a conflict of interest in the second set of contracts, at least so far as the interested officials are concerned.

It has been pointed out that exceptions to the void contract rule have been created in other jurisdictions. In Blankenship v. City of Richmond, 49 S.E.2d 321 (Va. 1948), a court decided that there was no conflict of interest where the officers voted on a legislative matter rather than a judicial one. In Downs v. Mayor and Common Council of the City of South Amboy, 185 A. 15 (N.J. 1936), a court decided that an ordinance which forbids an interest in municipal improvements made at municipal expense does not extend to improvements paid by another. Finally, in Preston v. Gillam, 184 A.2d 462 (N.H. 1962), the court found no conflict of interest where the interest is remote from or identical with the public interest. However, the courts of Texas have recognized only one exception to the void contract rule: the interest of a city official charged with making or ratifying assessment for improvements arising from ownership of property does not create a disqualification. Seymour v. Security Trust Company, 55 S.W.2d 853 (Tex. Civ. App. - Galveston 1932, writ dism'd); Farley v. Uvalde

Paving Company, 74 S.W.2d 288 (Tex. Civ. App. - El Paso 1934, no writ). The contracts presented here do not fall into the above exception.

## S U M M A R Y

Pursuant to article 3, section 4 of the San Benito City Charter, a conflict of interest exists when city officials contract for an Urban Development Action Grant and are among the merchants who would benefit from the grant by receiving an interest subsidy.

Very truly yours,

MARK WHITE
Attorney General of Texas

JOHN W. FAINTER, JR.
First Assistant Attorney General

RICHARD E. GRAY III
Executive Assistant Attorney General

Prepared by Patricia Hinojosa
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

Susan L. Garrison, Chairman
Jon Bible
Roxanne Caperton
Rick Gilpin
Patricia Hinojosa
Jim Moellinger